MARY H. PRESSTMAN, GEORGE R. PRESSTMAN, and others *vs.* JOHN T. MASON, and others. DWIGHT E. LYMAN and CUMBERLAND DUGAN, Trustees under the Will of GEORGE PRESSTMAN, deceased, *vs.* JOHN T. MASON, and others.

*Bill of Review—Laches—Estoppel—Inadequacy of price—Counsel and Client—Actual or Constructive Knowledge—Parties.*

A subpœna was issued against a defendant corporation. Upon the writ the defendant's solicitor entered admission of service, and subscribed it, and the sheriff returned the writ "summoned." The

Presstman, *et al. vs.* Mason, *et al.*

complainants asked for and obtained an interlocutory decree for want of appearance, took testimony under it, and asked for and obtained a decree, under which an interest in real estate was sold. The proceeds of sale were distributed among the parties, and the complainants received and some gave releases for their shares. The decree for sale was passed in April, 1874, the sale was made in October, 1881, and was finally ratified in April, 1882. On the 4th of April, 1885, some of the complainants filed a bill of review against their co-complainants who were living, the assignees of a co-complainant and the defendant, to set a side the decree on the ground that the defendant had not been summoned, and for other alleged irregularities. HELD:

1st. That both on the ground of laches and estoppel, the complainants were not entitled to the relief sought.

2nd. That having claimed the benefit of the return of the sheriff, and acted under it in obtaining the decree for sale, and having required the sale to be made, and received their share of the purchase money, it required a very strong case of serious injury to the parties complaining to justify the Court in entertaining a bill of review.

3rd. That the price for which the property was sold could have no bearing on the question whether the decree for a sale was right or wrong.

4th. That the complainants had failed to file their bill of review within the time which practice in this State has thoroughly established as necessary.

5th. That as to the irregularities, of which ignorance was averred, they must have been known to their counsel, or ought to have been, and the complainants were to be held as affected by his actual or constructive knowledge, in the absence of any fraud practiced on them by him.

6th. That if the title of the purchaser under the decree were affected by any defect in the proceedings, the complainants were not the persons to seek to remedy it.

APPEALS from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*Robert R. Boarman* and *Geo. Hawkins Williams*, for the appellants Lyman and Dugan.

Partition is one of the familiar heads of equity jurisdiction independently of statute, and whilst it may be regulated, and is in this State, by statute, its jurisdiction on such matter has not been impaired; in fact has been added to. 1 *Story Equity*, secs. 646-658.

Bills of review should not to be filed after nine months. *Downes vs. Friel,* 57 *Md.,* 534; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455.

After the time has gone over there is no jurisdiction in the Court to entertain a bill of review. *Berrett vs. Oliver,* 7 *Gill & J.,* 204-6-8.

Parties cannot be heard to say that their own doings through skilful counsel surprised themselves, and ask a Court of equity, on the ground of self surprise and their own irregularities, to set aside a judicial sale procured solely by their own solicitation. And how can parties be allowed to say that they but recently acquired knowledge of their own deliberate acts of former years?

If it be Maryland law that judicial sales are to be upheld, when publicly made and regularly and fairly made, then this has been ignored at the instance of those who made it—all of them adults and *"sui juris."*

As to estoppel,—until *Long vs. Long,* 62 *Md.,* 71, ceases to be authority, it is submitted that the Masons are forever precluded, whether the sale to Spence was void or good. "It would certainly be against equity and good conscience to allow them to receive the money, and also to recover the land for which the money was paid. That could not upon any principle be allowed."

Why should the city escape this doctrine? Money arising from a judicial sale is paid to her proper officer, (the Register,) who, by law (ordinance, Art. 38, sec. 6,) was bound to report it to the City Council, and who did report it.

Presstman, *et al. vs.* Mason, *et al.*

*John Johnson,* for the appellants, Mary H. Presstman and others.

The Court below erred in granting the leave to file the bill of review. *Alexander's Chan. Prac.,* 178, 179; *Hitch vs. Fenby,* 4 *Md. Ch. Dec.,* 190, *affirmed in* 6 *Md.,* 218.

Even if the leave to file the bill of review was not improvidently granted, still the bill should have been dismissed on demurrer. *Berrett vs. Oliver,* 7 *Gill & J.,* 207.

The bill should be dismissed on the merits. The sale in this cause was a judicial sale. All the presumptions and intendments of law are in favor of supporting and upholding such sales when made in good faith by the seller; and *bona fide* purchasers at such sales will be protected by the Courts when they have relied on those sales, and parted with their money. 7 *Gill,* 269; 11 *Gill & J.,* 355; 23 *Md.,* 114; 14 *Md.,* 121; 27 *Md.,* 452; 30 *Md.,* 82; 34 *Md.,* 115.

There were no defects on the face of the proceedings, nor any new matter to invalidate the sale. We have then a right to assume that the parties to the suit are bound by the original decree to sell, especially when they participated in the fruits of the sale, which sale they urged on; and they are estopped forever from denying the validity of a sale in which they participated, they being its principal promoters. *Long vs. Long,* 62 *Md.,* 34.

*John T. Mason, R.,* for the appellees, the Mason heirs.

The Mayor and City Council never having been summoned in the Spence case, the interlocutory decree passed therein for want of an appearance was absolutely void, and every subsequent step was equally void, as the whole proceedings was *ex parte* or unilateral, from that point onward.

The return to the *subpœna* in the Spence case was simply "summoned," which was wholly insufficient; where the writ is directed to a corporation, the return of the sheriff

must show upon whom service was made.  *Northern Cent. R. R. Co. vs. Rider,* 45 *Md.,* 25.

The Spence bill shows on its face that the Court was entirely without jurisdiction to grant the relief asked.  It could neither divide the land nor sell it, on the ground that it could not be divided without loss or injury to the parties. The object of a partition suit is to divide the land in such a manner that the tenants in common, who are seized of an undivided part of every particle of the land, may, after the partition has been made, each hold his own part in severalty.  It is manifest that this result can only be attained by making all the tenants in common, parties to the suit, as no one can be bound by a suit to which he is not a party.  *Freeman on Partition,* secs. 463, 466, 508; *Barney vs. Baltimore,* 6 *Wall.,* 280, 284, 285; *Burhans vs. Burhans,* 2 *Barb. Ch.,* 407; *Shields vs. Barrow,* 17 *How.,* 130; *Kester vs. Stark,* 19 *Ill.,* 329; *Candy vs. Stradley,* 1 *Del. Ch.,* 113; *Brashear vs. Macey,* 3 *J. J. Mar.,* 93; *Borah vs. Archers,* 7 *Dana,* 177, 178.

In the Spence case the bill alleges in plain terms that the parties are seized only of an *undivided fourth part* of the land.  How was it possible to divide that undivided fourth part, so that each could hold his own in severalty? Would not the parties after such a partition still be tenants in common, with the owners of the remaining three-fourths of the land ?

But it is said that this was a bill to sell the land, not to divide it; that does not help the matter, for the statute only permits a sale where a partition would be made, if it could be done without loss or injury to the parties.  In other words, the Court must have jurisdiction to divide the land, before it can sell the land; and the sale is another way of dividing, by converting the land into money and then dividing the money.  The sale is a substitute for the partition, and the fact that the land is sold instead of be-

ing divided, does not in any way enlarge the jurisdiction of the Court.

No case can be cited in Maryland, or elsewhere, in which partition, or sale for that purpose, has been attempted, of an undivided interest in land.

The objection went to the jurisdiction of the Court, and it is an elementary proposition that consent even cannot give jurisdiction. The Court must take judicial notice of a defect, by which it has no jurisdiction. *Berrett vs. Oliver,* 7 *Gill & J.*, 207, 208.

Had the attention of the Court been called to this matter, it would have been bound to dismiss the bill, even if the parties had desired it to proceed to a decree.

In order to render an act of ratification effective and conclusive, the party must have been fully aware of every material fact of the transaction, and have complete knowledge of his legal rights, and of how those facts would be dealt with if brought before a Court of equity. *Lammott vs. Bowley,* 6 *H. & J.*, 524; *Howard vs. Carpenter,* 11 *Md.*, 279; *Hoffman, &c. vs. Cumb. Coal and Iron Co.*, 16 *Md.*, 508; *Cumb. Coal and Iron Co. vs. Sherman,* 20 *Md.*, 151; *Pairo vs. Vickery,* 37 *Md.*, 486; *Trader vs. Lowe,* 45 *Md.*, 12; *Long vs. Long,* 62 *Md.*, 70, 71.

" In order to constitute a valid confirmation, a person must be aware that the act he is doing will have the effect of confirming an impeachable transaction." 1 *Lead. Cases in Equity,* 117m, *cited in Pairo vs. Vickery,* 37 *Md.*, 486.

There can be no ratification, such as is claimed here, unless the party is shown to have had a knowledge of the defect which he is alleged to have ratified.

In view of the fact that the Court had no jurisdiction in the Spence case, the sale made there was void "at all times and in all places," and the principle of ratification and estoppel has no application to it. It is only in cases where the Court had jurisdiction that void and voidable sales have been held to have been ratified by the con-

duct of the parties. *Long vs. Long,* 62 *Md.,* 62, 63; *Hunter vs. Hatton,* 4 *Gill,* 115.

The defence of *laches* has also been set up in the answer of the appellants. The facts of this case do not sustain this. defence. The sale was made in October, 1881, and the money paid in May, 1882. The appellees filed their bill in 1885, four years after the sale, and three years and a half after they had received the money; but the bill of review was filed within two or three months after the Masons. learned, for the *first time, that the sale was void,* and that their rights in the land had not been divested thereby. Surely there was no laches here. *Pairo vs. Vickery,* 37 *Md.,* 488-9.

A question was raised by the demurrer of the appellants, "that more than nine months have elapsed and transpired since the passing of the decree of the 24th of April, 1874," and that, therefore said bill of review came too late. In reply to this it is submitted that whenever a decree has been entered by *mistake,* it will be reversed either upon a bill or petition, after enrolment, and without reference to the old practice of requiring the decree to be attacked within nine months. *Oliver vs. Palmer,* 11 *Gill & J.,* 137, 147; *Herbert vs. Rowles,* 30 *Md.,* 278; *First Natl. Bank vs. Eccleston,* 48 *Md.,* 145, 155; *Gechter vs. Gechter,* 51 *Md.,* 187; *Rust vs. Lynch and Jackson,* 54 *Md.,* 637; *Bolgiano vs. Cooke,* 19 *Md.,* 396.

*W. F. Wharton,* and *Robert Gilmor,* for the appellee, the Mayor and City Council of Baltimore.

The Mayor and City Council of Baltimore, one of the appellees, contends that all the proceedings in the case of *N. Carroll Spence, et al. vs. Mayor and City Council of Baltimore,* are totally void and incurable, *ab initio,* for want of jurisdiction over the subject-matter. *Long vs. Long,* 62 *Md.,* 62.

Presstman, *et al. vs.* Mason, *et al.*

The bill of complaint in said case is for partition, under Article 16, section 99, of the Code, based upon the right of separate enjoyment by tenants in common.

It is indispensable to jurisdiction that the bill should allege that the property, the subject-matter, cannot be divided without loss and injury, to be followed by proof. *Fox vs. Reynolds,* 50 *Md.,* 57.

How is it possible to divide an undivided one-fourth interest, which is the *subject-matter* of this bill? The owner of an undivided interest is not entitled to a partition of part of the land held in common, but, the *whole* must be divided, if any. A tract held in common cannot be partitioned by fragments. It is *indispensable* that the whole tract should be embraced in the suit for partition. *Barney vs. City of Baltimore,* 6 *Wallace,* 284; *Shields vs. Barrow,* 17 *Howard,* 630; *Freeman on Co-tenancy and Partition,* secs. 463, 508, 509; 5 *Wait's Actions and Defences,* 89; *Duncan vs. Sylvester,* 16 *Me.,* 388; *Bigelow vs. Littlefield,* 52 *Me.,* 24.

There was no defendant in Court to demur. When the bill on its face discloses want of jurisdiction it is immaterial whether the defendant relies upon want of jurisdiction or not. It is a matter of law, which the Court must judicially notice, and, to which, it cannot close its eyes; but must dispose of this question in precisely the same manner that an Appellate Court would do, if a case were brought before it, after the time limited by law for granting such appeals. *Berrett vs. Oliver,* 7 *Gill & J.,* 206, 207.

The want of jurisdiction over the subject-matter is fatal, and all the parties coming in, and taking their shares of the money, would not cure it.

The proper parties were the owners of the other undivided three-fourths interest. They were tenants in common of the whole, as well as of part. The occupation was undivided, and none knoweth his own part in severalty. 1 *Coke,* 500.

All tenants in common are necessary parties, and, until they are subjected to its jurisdiction, a Court cannot proceed.

If a decree is made, intending to bind them, it would be manifestly unjust to do this, when they are not parties, and have no opportunity to be heard. But, as the decree cannot bind them, the Court cannot, for that very reason, afford the relief asked by the other parties.

If a decree should partition the land, the particular pieces of land allotted to the parties before the Court, would still be undivided, as to the parties not before the Court, whose interest in each piece would remain as before the partition of the whole tract, unaffected by the decree in this case, because they can be bound by no decree to which they were not parties.

The Mayor and City Council of Baltimore, the only defendant, was never properly summoned, or in Court, and not bound by these proceedings. *Northern Central R. R. Co. vs. Rider,* 45 *Md.,* 24.

The acceptance of money by the Mayor of Baltimore City, is no ratification of sale or estoppel, because the Mayor had no power to make the sale originally, and, could not ratify it. Acceptance of money by the Mayor and officers of a municipal corporation, is not such a ratification of sale as to pass title. *McKim vs. Odom,* 3 *Bland,* 417; *Mayor, &c. of Baltimore vs. Reynolds,* 20 *Md.,* 14.

Officers of the city, under the authority of a void ordinance, made sale of real estate belonging to the City of San Francisco. It was held that no title passed; and the appropriation for municipal purposes of the proceeds of the sale, while it would impose on the city, liability to pay back to the purchaser the money received, would not have the effect to ratify the sale. *Dillon on Mun. Corp.,* secs. 447, 750; *McCracken vs. San Francisco,* 16 *Cal.,* 511; *Grogan vs. San Francisco,* 18 *Cal.,* 590; *Pimental vs. San Francisco,* 21 *Cal.,* 351.

IRVING, J., delivered the opinion of the Court.

On the 19th of June, 1873, the appellees in these appeals, with certain other persons, filed a bill in the Circuit Court for Baltimore County, averring a tenancy in common with the Mayor and City Council of Baltimore, in an undivided fourth part of certain lands mentioned in certain Exhibits filed with the bill; and averring that it would be for the interest and advantage of all the parties to have the same sold. Subpœna was issued for the Mayor and City Council of Baltimore. The sheriff returned the writ "summoned;" and on the writ the City Solicitor entered admission of service and subscribed it. By successive stages the case went to decree on the 24th of April, 1874. The decree was for a sale, and a trustee was appointed to make it. The sale, however, did not take place until the 13th of October, 1881, when the trustee did sell the property. The sale was duly reported, and the same was finally ratified in April, 1882. An auditor's report was made, and the proceeds were duly distributed between the complainants and the defendant, the Mayor and City Council; and the proceeds were duly paid over accordingly; and these appellees executed releases for their shares, which releases are a part of the record in this case.

On the 4th of December, 1885, the appellees, who were some of the complainants, asked and obtained leave of the Court to file a bill of review; and on the same day filed a bill of review against their co-complainants and the Mayor and City Council of Baltimore. The bill of review avers certain irregularities in the proceedings in the former case, which are alleged to have been fatal to its validity, and rendered the decree ineffective to pass good title to the land sold, and also charges a great sacrifice of the land and their interests by the sale, which they charge brought a grossly inadequate price.

The irregularities insisted upon are, that in fact, the Mayor and City Council were never "summoned," though

so returned by the sheriff; and that the admission of service by the City Solicitor was unauthorized, and ineffectual to do away with the need of actual and regular service; and that consequently the interlocutory decree was irregular and improvident; and that, as a consequence, all subsequent proceedings were invalid. To this bill, Lyman and Dugan, appellants, demurred; but the demurrer was overruled, and they answered. Subsequently, the appellants Mary H. Presstman and others filed a petition, as purchasers under the former decree, asking leave to be made defendants; which prayer was granted and they were accordingly made defendants and answered, as also did Lyman and Dugan, and the other defendants, who were originally complainants. All resisted a disturbance of the former decree, except the Mayor and City Council. Afterwards the appellees filed their petition alleging that the answer of some of the defendants made it necessary for them to amend their bill, and asked leave to amend the same. This leave being granted, they amended their bill by alleging a want of jurisdiction in the Court " to decree a partition of land, or a sale, without having before it all the tenants in common of such land, and that in this instance the owners of one undivided fourth part only of the land of which partition was sought to be made, were made parties to that suit, and that the entire proceeding is therefore null and void." They also averred that knowledge of the mistake had only recently come to their knowledge ; and that they had not intended to ratify the proceeding by taking the money arising from the sale.

Answers to the amended bill were filed; issue was joined, and after testimony the Court passed the decree setting aside the original decree, and from that decree appeal was taken.

We are all of opinion that there was error in entertaining this bill of review, and setting the original decree aside. The bill of review ought to have been dismissed.

In so deciding it is not necessary for us to determine whether an undivided interest in land may be sold under such a proceeding as was had, and which it is sought to review. In fact, we ought to note that the question, as argued in this Court, is not presented by allegation in the bill of review. The only question as to jurisdiction raised by the bill of review, by the fair reading thereof, is the failure to make certain persons parties defendant. Nor is it necessary for us to decide whether there are any irregularities or defects in the proceeding such as are claimed; for we do not think these appellees are so situated as to be entitled through bill of review to a consideration of any of these questions. Both on the ground of laches and estoppel are they disentitled to the relief they seek.

"It is the universal law that if a man, by words or conduct, has intimated that he consents to an act which has been done, and that he will offer no opposition to it, although it could not have been done without his consent, and he induces others thereby to do what they would otherwise have abstained from doing, he cannot question the legality of the act he sanctioned, to the prejudice of those who have so given faith to his words or the fair inferences from his conduct." 2 *Story's Eq.*, sec. 1546. Now what have these appellees done? They asked the Court to exercise the jurisdiction, under sec. 99 of Article sixteen of the Code, and to sell the property. They claimed the benefit of the return of the sheriff, notwithstanding it may not be technically sufficient for a return of service on a corporation. They claimed the benefit of the admission of service by the City Solicitor. They asked for an interlocutory decree for want of appearance. They took testimony and claimed a decree for sale and obtained it. All this they did by a most competent solicitor, and what he did for them was their doing. They insisted that the trustee should make the sale when he had been deferring in hope of a better price than had been offered. On their importunity the land was

sold; and the purchaser is in Court resisting a review of the decree under which he bought, and paid his money; which purchase money, after ratification of the sale at their instance, has been divided by the auditor among the parties; and they have received their share and executed releases therefor. Now more than eleven years after the decree for sale was passed they ask its review and rescission. More than four years after the sale and its ratification, and the payment of the money by the purchaser, and more than three years after they received their money, the whole thing is asked to be set aside by some of the very persons who procured it to be done. Under such circumstances a very strong case ought to be made of serious injury to the party complaining, to justify a Court in entertaining a bill for review and disturbing a decree passed so long ago. Such case the appellees did not make in their bill or proof. It is well settled that a party to entitle himself to a bill of review must show himself to have been injured. *Lansing vs. Albany Ins. Co., Hopkins Ch. Rep.,* 102; *Hughes vs. Stickney,* 13 *Wendell,* 280. This the appellees have entirely failed to do. Indeed it is difficult to see in what respect, on their own contention, they have been injured, unless it be in the inadequate price which it is alleged the land brought; and so far as this proceeding is concerned they have no testimony on that subject, and rely wholly on what was testified to in the original proceeding on that subject before decree was passed. Yet the sale was made and ratified without objection; and now the *sale* is sought to be set aside through a review of the decree. Clearly the price which the property brought can have no bearing on whether the original decree was right or wrong.

If a plaintiff who has caused an execution to be issued on a judgment he has procured, and which has been returned satisfied, and receipted by his attorney, cannot be allowed a writ of error, which is clearly the law, (*Her-*

*man on Estoppel, sec.* 552); it is clear, that parties situated as these appellees are, under all the facts of this case must be estopped from claiming a bill of review. Having received their money and released the trustee, they cannot be heard now in a Court of equity to say that the Court had no right to do what they asked and procured to be done. *Long vs. Long,* 62 *Md.,* 33.

But besides all this, these appellees have failed to file their bill of review within the time which *practice* in this State has thoroughly established as necessary. Both in England and in this country the filing of bills of review is ordinarily restricted to a period within which an appeal may be taken. 2 *Daniel's Chancery Practice,* 1580 *and* 1581, *and note; Alex. Chy. Pr.,* 179; *Berrett vs. Oliver,* 7 *G. & J.,* 207; *Hitch vs. Fenby,* 4 *Md. Chy. Dec.,* 190, and 6 *Md.,* 218. The Maryland authorities just cited, fix the period after which bills of review ordinarily cannot be filed, at nine months, which was the period within which appeals in equity could be prosecuted before the adoption of the new equity rules, which have shortened the time for appeal; and as this Court under constitutional authority have made a rule for the expediting of business, requiring all appeals to be taken within sixty days, we are *not hereby to be understood* as deciding that hereafter bills of review must be filed within that period instead of nine months as heretofore practiced. Parties are required to use reasonable diligence, and as respects the ignorance alleged, the question is not what a party actually did know, but what by using due diligence he might have known. 4 *Md. Ch.,* 190. Here the only ignorance alleged is of alleged irregularities in the proceedings. That the land brought less than its value, we do not understand the bill to allege ignorance; for that, of necessity, if true, they must have known as well then as now. The evidence of its value was given before original decree and none in this proceeding; and, as we have already said, that cannot now

possibly be a ground for disturbing the original decree, whatever its effect might have been, if the sale had been excepted to before ratification.     As to the irregularities, of which ignorance is averred, we have already said, that if they be irregularities, they were availed of to secure the decree ; and although they personally may not have known of them till recently, the facts were known to their counsel, or must, from their nature, have been known to him, a very competent person, or ought to have been ; and the appellees, as to such matters, are to be held as affected by the actual or constructive knowledge of their solicitor entrusted with the case ; unless it could be shown that they were the victims of fraud practiced on them by their solicitor ; which in this case is not supposable, and was not suggested as possible, but on the contrary, was actually disclaimed. *Weeks on Attorneys-at-Law, sec.* 327 ; *Worsley vs. Scarborough,* 3 *Atkyn's,* 392 ; *Pepper & Co. vs. George, et al.,* 51 *Ala.,* 190 ; *May vs. LeClaire,* 11 *Wallace,* 217.

In no aspect of this case do we think there was any sufficient ground laid to justify the decree setting aside the original decree.     If the proceeding was absolutely null and void on its face, a proceeding to set it aside would seem needless.     If in fact, as is contended, the appellants' title was defective because of it, the appellees were not the persons to seek to remedy it.     The decree must be reversed and the bill must be dismissed.

*Decree reversed, and bill dismissed.*

(Decided 15th December, 1887.)